FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JUL 18 2014
JAMES W. McCORMACK, CLERK
By: ________ DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

**CLAUDE WALLACE and JOE RATH,**
**On Behalf Of Themselves And**
**All Others Similarly Situated** **PLAINTIFFS**

**v.** **NO.** 4:14cv415 BRW

**SEECO, INC.** **DEFENDANT**

**CLASS ACTION COMPLAINT**
**AND**
**DEMAND FOR JURY TRIAL**

Come now the Plaintiffs herein, and on behalf of all others similarly situated, through their attorneys, Grayson & Grayson, P.A. and the Hicks Law Firm, and in support of their claims allege and state as follows:

This case assigned to District Judge Wilson
and to Magistrate Judge Ray

**NATURE OF THE CLASS ACTION**

1. Plaintiffs and putative class members bring claims based upon the Defendant's underpayment of royalties on natural gas from wells in Arkansas through improper accounting methods such as starting with a price that is too low, and by failing to account for and pay royalties, all as more fully described below. Accordingly, Plaintiffs and putative class members request injunctive and declaratory relief, damages for Breach of Contract, violation of the Arkansas Deceptive Trade Practices Act, for Unjust Enrichment, punitive damages and attorneys' fees and costs.

2. The putative classes consist of mineral owners who meet the following conditions: (1) were integrated on or after October 30, 2006; and (2) received royalties or are due royalties from the Defendant. Excluded from this class are governmental agencies of the State of Arkansas and the United States of America; XTO Energy, Inc. and its affiliates;

Chesapeake Energy Corporation, and its affiliates; BP America Production Company and its affiliates; and BHP Billiton, Ltd. and its affiliates.

**VENUE AND JURISDICTION**

3. This Court has subject matter and *in personam* jurisdiction pursuant to the Class Action Fairness Act of 2005.

4. This Court has jurisdiction over the Defendant in that its wrongful acts occurred and caused damages to class members in Arkansas and the gas well royalties are all produced in Arkansas.

5. Venue is proper in this Court for one or more of the following reasons:

(i) The wells are located in Arkansas;

(ii) Many class members reside in Arkansas; and

(iii) The Defendant is a domestic corporation with substantial business in Arkansas.

6. Upon information and belief, there are more than one hundred (100) putative class members and damages will exceed five million dollars ($5,000,000.00).

**PARTIES**

7. Plaintiff Claude Wallace is a resident of Cleburne County, Arkansas and obtained one of his royalty interests by virtue of an integration order issued by the Arkansas Oil and Gas Commission ("AOGC"). He receives royalties from SEECO, Inc. with a SEECO, Inc. check stub.

8. Plaintiff Joe Rath is a resident of Cleburne County, Arkansas and obtained his royalty interest by virtue of an integration order issued by the AOGC and receives royalties from SEECO, Inc. paid by the operator of the wells in his drilling unit, BHP Billiton.

9. SEECO, Inc. (sometimes referred to as the "Defendant") is a domestic corporation that lists its registered agent for service of process as The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

**CLASS ALLEGATIONS**

10. A true and correct copy of the lease Plaintiffs and others similarly situated have accepted as part of the forced integration process is attached hereto as "Exhibit 1" and incorporated by reference herein word for word. True and correct copies of the Integration Orders of the Arkansas Oil and Gas Commission ("AOGC") related to Plaintiffs' mineral interests referred to herein are attached as "Exhibit 2" and "3" and incorporated herein word for word.

11. Upon information and belief, when SEECO, Inc. is the operator of the well, it takes title and transfers it to an affiliate who sells the gas to third parties.

12. The lease that Plaintiffs and the putative class members were integrated under states that in the event the operator sells to an affiliate, "then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range."

13. Upon information and belief, the Defendant does not even conduct an inquiry to determine the price paid by any other purchaser in the governmental township and range. As a result, Defendant does not pay royalties according to the terms of the lease.

14. This is a breach of the lease which results in the unjust enrichment to SEECO, Inc. and an underpayment of royalties to Plaintiffs and putative class members.

15. A true and correct copy of a check stub from SEECO, Inc. payable to Plaintiff Claude Wallace is attached hereto as "Exhibit 4" and incorporated herein by reference word for

word. A true and correct copy of a check stub from BHP Billiton reflecting royalty payments to Plaintiff Joe Rath is attached as "Exhibit 5" and incorporated herein by reference word for word.

16. Upon information and belief, SEECO, Inc. transfers title of gas to an affiliate who then sells the gas to a third party and remits the proceeds to SEECO, Inc. who then pays royalties to Plaintiffs and other putative class members.

17. Having satisfied the prerequisites of F.R.C.P, Rule 23(a), the Court should maintain this class action because prosecuting separate actions by individual class members of the class would create risk of:

A) Inconsistent or varying adjudications with respect to individual class members under the same or substantially similar forms of leases that would establish incompatible standards of conduct for the Defendant (FRCP 23(b)(1)(A)) or

B) Adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interest (FRCP 23(b)(1)(B)).

18. In addition, and in the alternative, this class action is maintainable because:

A) The Defendant has acted or refused to act on grounds that apply generally to a class, so that corresponding declaratory relief is appropriate respecting the class as a whole (FRCP 23(b)(2)); or

B) The questions of law and fact common to the class members predominate over any questions affecting only individual members, and because of this, class action is superior to other available methods for fairly and efficiently adjudicating the controversy and claims of the class against the Defendant. (FRCP 23(b)(3)).

**THE CLASS**

19. Plaintiffs and putative class members have been paid royalties by SEECO, Inc. pursuant to the terms of a lease attached as Exhibit "1" and they are paid royalties pursuant to an Integration Order similar to that attached as Exhibit "2", both of which are incorporated by

reference word for word. Plaintiffs bring this action individually and, pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b), as representative of classes defined as follows:

> THE CLASS DEFINED:
> Integrated mineral interest owners who meet the following conditions: (1) were integrated on or after October 30, 2006; and (2) have received or are due to receive royalties from the Defendant. Excluded from this class are (a) all governmental agencies of the State of Arkansas and the United States of America, (b) XTO Energy, Inc. and its affiliates; (c) BP Production Company and its affiliates; (d) BHP Billiton, Ltd. and its affiliates; and (e) Chesapeake Energy Corporation and its affiliates.

**NUMEROSITY**

20. The members of the class are so numerous and geographically dispersed that joinder of all members is impractical. For instance, SEECO, Inc. operates a large number of gas wells in Arkansas, with at least one, and usually many more, royalty owners for each well. SEECO, Inc. has within its possession or control records that identify all persons to whom they have paid royalties from wells located within Arkansas from October 30, 2006 to the present.

**TYPICALITY AND COMMONALITY**

21. The claims of Plaintiffs are typical and common of the claims of the other members of the class because, for instance, (without limitation):

> (a) Plaintiffs and the putative class members do not receive the price that SEECO, Inc. is obligated to pay under the terms of the AOGC lease form, Exhibit "1".
>
> (b) Plaintiffs and the putative class members had their royalty interest calculated solely according to the internal accounting, royalty payment formulas, and record keeping operations of SEECO, Inc. which are not known to the members of the class;
>
> (c) Plaintiffs and the putative class members have the same legal claim to recover these underpayments;
>
> (d) Upon information and belief, SEECO, Inc. uses a weighted average sales price to pay royalty owners in this proposed class and not a price no

less than that received from any other purchaser within the governmental township and range in which the lease is located as required by the lease.

**FAIR AND ADEQUATE PROTECTION**

22. Plaintiffs will fairly and adequately protect the interests of the members of the class. Plaintiffs receive royalties from SEECO, Inc. and understand their duties as class representatives. Plaintiffs have retained counsel competent and experienced in complex litigation.

**COMMON QUESTIONS OF LAW AND FACT**

23. Common questions of law or fact exist as to all members of the class and those common questions predominate over any questions solely affecting individual members of such class. There is no need for individual class members to testify in order to establish Defendant's liability or even damages to the class. Among the questions of law or fact that are common to Plaintiffs and other members of the class, and which will predominate are, without limitation, the following:

(a) Plaintiffs and the putative class members do not receive the price that SEECO, Inc. is obligated to pay under the terms of the AOGC lease form, Exhibit "1".

(b) Plaintiffs and the putative class members had their royalty interest calculated solely according to the internal accounting, royalty payment formulas, and record keeping operations of SEECO, Inc. which are not known to the members of the class;

(c) Plaintiffs and the putative class members have the same legal claim to recover these underpayments;

(d) Upon information and belief, SEECO, Inc. uses a weighted average sales price to pay royalty owners in this proposed class and not a price no less than that received from any other purchaser within the governmental township and range in which the lease is located as required by the lease.

**SUPERIORITY**

24. Class action treatment is appropriate in this matter and is superior to the alternative of numerous individual lawsuits by members of the class. Class action treatment will allow a large number of similarly situated individuals to prosecute their common claims in a single form, simultaneously, efficiently, and without duplication of time, expense and effort on the part of those individuals, witnesses, the Courts and/or Defendant. Likewise, class action treatment will avoid the possibility of inconsistent and/or varying results in this matter arising out of the same facts. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative form exists for the fair and efficient adjudication of the claims of all class members.

25. Class action treatment in this matter is further superior to the alternative of numerous individual lawsuits by the members of the class because joinder of all members of those classes would be either highly impractical or impossible and because the amounts at stake for individual class members, while significant in the aggregate, are not great enough to enable them to enlist the assistance of competent legal counsel to pursue their claims individually.

26. In the absence of a class action in this matter, Defendant will likely retain the benefit of its wrongdoing.

**COUNT I - DECLARATORY JUDGMENT ACTION**

27. Paragraphs one (1) through twenty-six (26) are incorporated by reference herein word for word.

28. Plaintiffs and the putative classes seek to have the court issue a declaratory judgment that SEECO, Inc. has underpaid Plaintiffs and putative class members by failing to pay the correct price for gas in computation of royalties.

## COUNT II – BREACH OF CONTRACT

29. Plaintiffs and the putative class members incorporate by reference the allegations contained in paragraphs one (1) through twenty-eight (28) hereinabove.

30. SEECO, Inc. has breached its obligation under the lease with Plaintiffs and members of the putative classes by failing to pay the proper price for gas when computing the royalty payments.

31. Upon information and belief, SEECO, Inc. uses other methods, yet to be discovered, to reduce royalty payments to Plaintiffs and others similarly situated.

## COUNT III - VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT (A.C.A.§4-88-107(a)(1), (8), (10) AND (b)), et al.

32. Paragraphs one (1) through thirty-one (31) are incorporated by reference herein word for word.

33. Plaintiffs and class members affirmatively plead a count of violation of the Arkansas Deceptive Trade Practices Act more particularly described as A.C.A.§4-88-101, et seq. Plaintiffs and class members particularly direct Defendants to A.C.A.§4-88-107 as follows:

> (a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter including, but are not limited to, the following:
>
> (1) Knowingly making a false representation as the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services, or as to whether goods are original or new, or of a particular standard, quality, grade, style or model;
>
> (8) Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of physical infirmity, ignorance, illiteracy, inability to understand the language of the agreement, or a similar factor;
>
> (10) Engaging in any other unconscionable, false or deceptive act or practice in business, commerce, or trade.
>
> (b) The deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state.

34. Defendant herein has allegedly violated the Arkansas Deceptive Practices Act for the reasons set forth hereinabove.

35. A.C.A. §4-88-113, et al. set forth the civil enforcement for violations of the Arkansas Deceptive Practices Act, and Plaintiffs and class members request the maximum amount allowable by law for damages herein, as well as reasonable attorneys fees.

**COUNT IV - UNJUST ENRICHMENT**

36. Plaintiffs and the putative class members incorporate by reference all of the allegations contained in paragraphs one (1) through thirty-five (35) hereinabove.

37. SEECO, Inc. received or retained monies due and owing to Plaintiffs and the putative class members.

38. The existence and ongoing retention of these monies by the Defendants effected an immediate and measureable increase in all of the Defendants' cash, revenue and profits.

39. SEECO, Inc.'s retention of such monies is unjust and unwarranted for all the reasons set forth herein.

**DEMAND FOR JURY TRIAL**

40. Plaintiffs and the putative classes pray for a jury trial on all issues in this case including but not limited to treble and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the putative class members pray for an order and judgment against SEECO, Inc. in amounts greater than required for federal court jurisdiction in diversity of citizenship cases as follows:

a) Certifying this action pursuant to FRCP 23, as a class action with reasonable notice to be given to members of both classes;

b) For an award of damages from SEECO, Inc. including, but not limited to, disgorgement of amounts for which SEECO, Inc. has been unjustly enriched, interest at the highest allowable rate (such as lawful, equitable, or internal rate of return), for pre and post judgment interest, for compensatory damages; for punitive damages; for a permanent injunction directing payments in accordance with the "lease language";

c) Granting Plaintiffs and the putative classes the cost of prosecuting this action together with reasonable attorneys fees out of the recovery;

d) For a trial by jury on all issues so triable; and

e) Granting such other relief this Court may deem just, equitable and proper under the circumstances.

Respectfully submitted,

Grayson & Grayson, P.A.
P. O. Box 1447
Heber Springs, AR 72534
501-206-0905
klgmlg@aol.com

By: Keith L. Grayson (CH)
Keith L. Grayson, Ark. Bar #91014

Hicks Law Firm
111 Center St., Suite 1200
Little Rock, AR 72201
501-371-0068
charleshicks@gmail.colm

By: [signature]
Charles R. Hicks, Ark. Bar #79087

PRODUCERS 88 PAID-UP [REV.]—ARKANSAS FORM NO. 357

# OIL AND GAS LEASE
## (Paid-up Lease-No Delay Rentals)

THIS AGREEMENT, made and entered into this ________ day of ____________________, 200______, by and between ______________________

_______________________________________________________________________________

_______________________________________________________________________________

whose mailing address is ______________________________________________________ hereinafter called Lessor (whether one or more), and ______________________________________________________, hereinafter called Lessee:

WITNESSETH: That Lessor, for and in consideration of __Ten And More______ Dollars ($10 00 & more) and other good and valuable consideration in hand paid, receipt of which is hereby acknowledged, and of the agreements of Lessee hereinafter set forth, hereby grants, demises, leases and lets exclusively unto said Lessee the lands hereinafter described for the purpose of prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, including, but not as a limitation, casinghead gas, casinghead gasoline, gas-condensate (distillate) and any substance, whether similar or dissimilar, produced in a gaseous state, together with the right to construct and maintain pipe lines, telephone and electric lines, tanks, powers, ponds, roadways, plants, equipment, and structures thereon to produce, save and take care of said oil and gas, and the exclusive right to inject air, gas, water, brine and other fluids from any source into the subsurface strata and any and all other rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of air, gas, water, brine, and other fluids into the subsurface strata, said lands being situated in the County of ____________________________________ State of Arkansas, and being described as follows, to-wit:

of Section _______Township ___________Range ___________ it being the purpose and intent of Lessor to lease, and Lessor does hereby lease, all of the lands or interests in lands owned by Lessor which adjoin the lands above described or which lie in the section or sections herein specified whether or not herein completely and accurately described, together with and including any accretions thereto which may have formed, may now be forming or may hereafter form. For all purposes of this lease, said lands shall be deemed to contain ________________ acres.

Subject to the other provisions herein contained, this lease shall remain in force for a term of _____________ years from this date (herein called "primary term") and as long thereafter as oil and gas, or either of them, is produced from the above described land or drilling operations are continuously prosecuted as hereinafter provided. "Drilling Operations" includes operations for the drilling of a new well, the reworking, deepening or plugging back of a well or hole or other operations conducted in an effort to obtain or re-establish production of oil or gas; and drilling operations shall be considered to be "continuously prosecuted" if not more than 120 days shall elapse between the completion or abandonment of one well or hole and the commencement of drilling operations on another well or hole. If, at the expiration of the primary term of this lease, oil or gas is not being produced from the above described land but Lessee is then engaged in drilling operations, this lease shall continue in force so long as drilling operations are continuously prosecuted; and if production of oil or gas results from any such drilling operations, this lease shall continue in force so long as oil or gas shall be produced. If after the expiration of the primary term of this lease, production from the above described land should cease, this lease shall not terminate if Lessee is then prosecuting drilling operations, or within 120 days after each such cessation of production commences drilling operations, and this lease shall remain in force so long as such operations are continuously prosecuted, and if production results therefrom, then as long thereafter as oil or gas is produced from the above described land.

In consideration of the premises, Lessee covenants and agrees.

1st, To deliver, free of cost, to Lessor at the wells, or to the credit of Lessor in the pipeline to which the wells may be connected, the equal __________ (___) part of all oil and other liquid hydrocarbons produced and saved from the leased premises, or, at Lessee's option, to pay to Lessor for such ____________ (___) royalty the market price at the well for such oil and other liquid hydrocarbons of like grade and gravity prevailing on the day such oil and other liquid hydrocarbons are run from the lease.

2nd, Lessee shall pay Lessor ________ (___) of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an affiliate ("Affiliate" being defined as having a ten percent (10%) common ownership), then the proceeds derived form the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range in which the lease is situated.

The consideration paid to Lessor for this lease includes consideration in lieu of delay rental provisions and the rights and obligations of the parties hereunder shall be the same as if this lease contained provisions for the payment of periodic delay rentals throughout the primary term hereof and each such delay rental had been timely paid and accepted by Lessor.

If a well capable of producing gas or gas and gas-condensate in paying quantities located on the leased premises (or on acreage pooled or consolidated with all or a portion of the leased premises into a unit for the drilling or operation of such well) is at any time shut in and no gas or gas-condensate therefrom is sold or used off the premises or for the manufacture of gasoline or other products, nevertheless such shut-in well shall be deemed to be a well on the leased premises producing gas in paying quantities and this lease will continue in force during all of the time or times while such well is so shut in, whether before or after the expiration of the primary term hereof. Lessee shall use reasonable diligence to market gas or gas and gas-condensate capable of being produced from such shut-in well but shall be under no obligation to market such products under terms, conditions or circumstances which, in Lessee's judgment exercised in good faith, are unsatisfactory. Lessee shall be obligated to pay or tender to Lessor within 45 days after the expiration of each period of one year in length (annual period) during which such well is so shut in, as royalty, an amount equal to $1.00 per acre for the acreage covered by this lease as to which the leasehold rights are, at the end of such annual period, owned by the Lessee making such payment; provided that, if Lessor owns less than the full and entire royalty interest in such acreage, such payments shall be such part (calculated on a royalty-acre basis) of said amount as Lessor's royalty interest bears to the full and entire royalty interest in such acreage; and provided further that, if gas or gas-condensate from such well is sold or used as aforesaid before the end of any such annual period, or if, at the end of any such annual period, this lease is being maintained in force and effect otherwise than by reason of such shut-in well, Lessee shall not be obligated to pay or tender, for that particular annual period, said sum of money. Such payment shall be deemed a royalty under all provisions of this lease. Such payment may be made or tendered to Lessor ____________AT LESSOR'S ABOVE ADDRESS________________________________________, which bank and its successors shall continue as the depository regardless of changes in the ownership of said land or the right to receive royalty hereunder. Royalty ownership as of the last day of each such annual period as shown by Lessee's records shall govern the determination of the party or parties entitled to receive such payment.

If Lessor owns a less interest in the land covered by this lease than the entire and undivided fee simple mineral estate therein, then whether or not such less interest is referred to or described herein, all royalties herein provided shall be paid Lessor only in the proportion (calculated on a royalty-acre basis) which the royalty interest owned by him in said land bears to the full and entire royalty interest in said land.

If the estate of either party hereto is assigned or sublet, and the privilege of assigning or subletting in whole or in part is expressly allowed, the express and implied covenants hereof shall extend to the sublessees, successors and assigns of the parties; and in the event of an assignment or subletting by Lessee, Lessee shall be relieved and discharged as to the leasehold rights so assigned or sublet from any liability to Lessor thereafter accruing upon any of the covenants or conditions of this lease, either express or implied. No change in the ownership of the land or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee or require separate measuring or installation of separate tanks by Lessee. Notwithstanding any actual or constructive knowledge of or notice to Lessee, no change in the ownership of said land or of the right to receive royalties hereunder, or of any interest therein, whether by reason of death, conveyance or any other matter, shall be binding on Lessee (except at Lessee's option in any particular case) until 90 days after Lessee has been furnished written notice thereof, and the supporting information hereinafter referred to, by the party claiming as a result of such change in ownership or interest. Such notice shall be supported by original or certified copies of all documents and other instruments or proceedings necessary in Lessee's opinion to establish the ownership of the claiming party.



Lessee may, at any time, execute and deliver to Lessor or place of record a release covering all or any part of the acreage embraced in the leased premises or covering any one or more zones, formations or depths underlying all or any part of such acreage. and thereupon shall be relieved of all obligations thereafter to accrue with respect to the acreage, zones, formations or depths covered by such release.

Lessee is granted the right, from time to time while this lease is in force, to pool into a separate operating unit or units all or any part of the land covered by this lease with other land, lease or leases, or interests therein (whether such other interests are pooled by a voluntary agreement on the part of the owners thereof or by the exercise of a right to pool by the Lessees thereof), when in Lessee's judgment it is necessary or advisable in order to promote conservation, to properly develop or operate the land and interests to be pooled, or to obtain a multiple production allowable from any governmental agency having control over such matters. Any unit formed by such pooling shall be of abutting or cornering tracts and shall not exceed 640 acres (plus a tolerance of 10%) for gas or gas-condensate and shall not exceed 80 acres (plus a tolerance of 10%) for any other substance covered by this lease; provided that if any governmental regulation or order shall prescribe a spacing pattern for the development of a field wherein the above described land, or a portion thereof, is located, or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be permitted in such allocation of allowable. Each unit shall be created by Lessee's recording a declaration of Pooling containing a description of the unit so created. Such pooling shall be effective on the date such declaration is filed unless a later effective date is specified in such declaration. In lieu of the royalties elsewhere herein specified, except shut-in gas well royalties, Lessor shall receive on production from an area so pooled only such portion of the royalties which, in the absence of such pooling, would be payable hereunder to Lessor on production from the land covered by this lease which is placed in the pooled area as the amount of the surface acreage in the land covered by this lease which is placed in the pooled area bears to the amount of the surface acreage of the entire pooled area. Nothing herein contained shall authorize or effect any transfer of any title to any leasehold, royalty or other interest pooled pursuant hereto. The commencement of a well, the conduct of other drilling operations, the completion of a well or of a dry hole, or the operation of a producing well on the pooled area, shall be considered for all purposes (except for royalty purposes) the same as if said well were located upon, or such drilling operations were conducted upon, the lands covered by this lease whether or not such well is located upon, or such drilling operations are conducted upon, said lands. Lessee may terminate any pooling effected pursuant hereto at any time the pooled unit is not producing or no drilling operations are being conducted thereon by executing and filing of record in the county or counties in which the pooled area is located a written declaration of the termination of such pooling, provided that the pooling of all interests not covered by this lease which comprise a part of such pooled unit be also terminated in some effective manner.

Lessee shall have the right to use, free of cost, gas, oil and water found on said land for its operation, except water from the wells of the Lessor. When required by the Lessor, the Lessee shall bury its pipelines below plow depth and shall pay reasonable damages for injury by reason of its operation to growing crops on said land. No well shall be drilled nearer than 200 feet to any house or barn or other structure on said premises as of the date of this Lease without the written consent of the Lessor. Lessee shall have the right at any time during, or after the expiration of this Lease to enter upon the property and to remove all machinery, fixtures, and other structures placed on said premises, including the right to draw and remove all casing, but the Lessee shall be under no obligation to do so.

Lessor hereby warrants and agrees to defend the title to the lands herein described, but if the interest of Lessor covered by this lease is expressly stated to be less than the entire fee or mineral estate, Lessor's warranty shall be limited to the interest so stated. Lessee may purchase or lease the rights of any party claiming any interest in said land and exercise such rights as may be obtained thereby but lessee shall not suffer any forfeiture nor incur any liability to Lessor by reason thereof. Lessee shall have the right at any time to pay for Lessor, any mortgage, taxes or other lien on said lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof, and any such payments made by Lessee for Lessor may be deducted from any amounts of money which may become due Lessor under this lease.

All express provisions and implied covenants of this lease shall be subject to all applicable laws, governmental orders, rules and regulations. This lease shall not be terminated in whole or in part, nor Lessee held liable in damages, because of a temporary cessation of production or of drilling operations due to breakdown of equipment or due to the repairing of a well or wells, or because of failure to comply with any of the express provisions or implied covenants of this lease if such failure is the result of the exercise of governmental authority, war, armed hostilities, lack of market, act of God, strike, civil disturbance, fire, explosion, flood or any other cause reasonably beyond the control of Lessee.

This lease and all provisions thereof shall be applicable to and binding upon the parties and their respective successors and assigns. Reference herein to Lessor and Lessee shall include reference to their respective successors and assigns. Should any one or more of the parties named above as Lessors not execute this lease, it shall nevertheless be binding upon the party or parties executing the same.

Each husband/wife above named hereby joins in the execution and delivery of this lease for the purpose of conveying, releasing and relinquishing unto Lessee, for the purposes and consideration aforesaid, all of his/her right, title, interest and estate in said land, including any rights of dower/curtesy and homestead which he/she may have therein.

IN WITNESS WHEREOF, this lease is executed as of the day and year first above written.

____________________ ____________________

____________________ ____________________

**ACKNOWLEDGEMENT**

STATE OF ____________

(Joint Acknowledgement)

COUNTY OF ____________

On this _____ day of ____________, 2006, before me the undersigned Notary Public in and for said County and State,

personally appeared ________________________
known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged that they executed the same as their free and voluntary act and deed for the purposes and consideration therein mentioned and set forth.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

____________ Commission Expiration Date

____________ Notary Public

**ACKNOWLEDGEMENT**

STATE OF ____________

(Joint Acknowledgement)

COUNTY OF ____________

On this _____ day of ____________, 2006, before me the undersigned Notary Public in and for said County and State,

personally appeared ________________________
known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged that they executed the same as their free and voluntary act and deed for the purposes and consideration therein mentioned and set forth.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

____________ Commission Expiration Date

____________ Notary Public

**CERTIFICATE OF RECORDING**

STATE OF ________________

COUNTY OF ______________

This instrument was filed for record on the _______ of _________________, 2006, at _________ o'clock _____M and recorded in Book ___________ at Page ___________ of the records of this office.

______________________________________ By ____________________________________________

Clerk of the Circuit Court and Ex Officio Recorder Deputy

AFTER RECORDING RETURN TO: ________________________________________________________________

This Instrument Prepared By ________________________ of _____________________________________________.



**ARKANSAS OIL AND GAS COMMISSION**
**301 NATURAL RESOURCES DRIVE**
**SUITE 102**
**LITTLE ROCK, ARKANSAS 72205**

**ORDER NO. 510-2008-09** **October 1, 2008**

**General Rule B-43 Well Spacing Area**
*Cleburne County, Arkansas*

**INTEGRATION OF A DRILLING UNIT**

After due notice and public hearing in El Dorado, Arkansas, on September 23, 2008, the Arkansas Oil and Gas Commission, in order to prevent waste, carry out an orderly program of development and protect the correlative rights of each owner in the common source(s) of supply in this drilling unit, has found the following facts and issued the following Order.

**STATEMENT OF THE CASE**

**Chesapeake Exploration, L.L.C.** (the "Applicant") filed its application for an Order pooling and integrating the unleased mineral interest(s) and/or uncommitted leasehold working interest(s) of certain parties named therein who have failed to voluntarily integrate their interest(s) for the development of the unit comprising of Section 14, Township 10 North, Range 9 West, Cleburne County, Arkansas.

The Applicant presented proof that they had attempted unsuccessfully to acquire voluntary leases and/or other agreements for consideration or on terms equal to that otherwise offered and paid for similar leases or leasehold interest(s) in this drilling unit.

At the request of the Applicant, the following parties were dismissed by the Commission, regardless of whether the party or parties are listed as unleased mineral interest(s) or uncommitted leasehold working interest(s) to be integrated:

None

**FINDINGS OF FACT**

From the evidence introduced at said hearing, the Commission finds:

1. That the Applicant has proposed to drill a well within a drilling unit (Unit) that the Commission has previously established, consisting of Section 14, Township 10 North, Range 9 West, Cleburne County, Arkansas containing 640 acres, more or less.

2. The Applicant plans to drill such well (the "initial well") to test the Fayetteville

Shale Formation and any intervening formations for the production of hydrocarbons.

3. The requested Model Form Joint Operating Agreement employed by the Applicant and proposed to the owners set out in Finding Nos. 5 and 6 (if any) below, is in the form of A.A.P.L. Form 610-1982 Model Form Operating Agreement (JOA), completed, amended, and modified as adopted by the Commission on October 24, 2006.

4. The requested one-year term oil and gas lease (Lease) employed by the Applicant is in the form of Exhibit "B" of the JOA.

5. The unleased mineral interest(s) to be integrated are:

   Lorin K. Hornbeak and Nora E. Hornbeak; Sandra H. Dilks, c/o Wallace Hornbeak; Terry B. Hornbeak, c/o Wallace Hornbeak; Joe G. Rath and Jo L. Rath; The Cotton Family Trust; Freddie Lou Lodge Quist; M. Bruce Sanderson and Sara Simmons Sanderson; Richard L. Schwartz Revocable Trust, Richard L. Schwartz Trustee; Richard L. Schwartz, Trustee for Schwartz & Associates Profit Sharing Plan; Dena Alter Spears; William F. Alfonso and Sandra K. Alfonso; Alexander Richard Aitken and Lois M. Aitken; Stephen C. Reynolds and Ann S. Reynolds; Jonathan Duncan Lodge; G & H Associates, Inc.; Linda Dalrene Hinson; Irene S. Jones, c/o Linda Dalrene Hinson; James E. Jones and Frances J. Jones; The Estate of Arlin H. Hughes and The Estate of Lorene Hughes, c/o Ms. Nora Lee Hughes; Steve S. Allen; Tommy J. Bishop and Diane M. Bishop; Charles M. Bishop and Deborah A. Bishop, c/o Tommy J. Bishop; Lavon H. Reed; H.W. Roper; Michael E. Irwin; Robert R. Wilson; Larry W. Hornbeak, c/o Wallace Hornbeak;

and any unknown spouse, heir, devisee, personal representative, successor or assigns of said owners of unleased interests.

6. The uncommitted leasehold working interest(s) to be integrated are:

   Antero Resources, SEECO, Inc.;

and any unknown spouse, heir, devisee, personal representative, successor or assigns of said owners of uncommitted leasehold interests.

7. The Applicant requests that any parties listed in Findings Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) be integrated.

8. The alternatives for integrated parties are:

A. Unleased Mineral Interest(s) Alternatives:

1. Lease

Execute a lease covering the unleased mineral interest(s) with any party upon mutually agreed terms, provided that Applicant receives notice prior to the close of the "Election Period" provided in Paragraph No. 4 of the Order below (lessee would then be bound by the terms of this order as an uncommitted working interest owner, regardless of whether such owner is listed in Finding No. 6 above); or execute and deliver to the Applicant a Lease as identified in Finding No. 4 covering their unleased mineral interest(s) in the aforementioned Unit, for a cash bonus of $2300.00 per net mineral acre as fair and reasonable compensation in lieu of the election to participate with a working interest in said Unit and that said-Lease(s) provide for a 1/8 royalty, provided that any such owner should have the further option of a bonus of $1800.00 and retaining 1/5 royalty in said Lease, and that each such owner thereafter be bound by the terms of said Lease, including for purposes of subsequent operations, (whether or not such owner actually executes such Lease) for so long as there is production of hydrocarbons from within the Unit. Applicant must tender said lease bonus, subject to any applicable federal or state income tax "backup withholding" provisions, within thirty (30) days of the date an election is made; if such payment cannot be made due to issues regarding marketability of title, unknown addresses, or unknown successors in interests, then the Applicant shall pay said bonus into one or more identifiable trust accounts (which shall be accounts in a bank, savings bank, trust company, savings and loan association, credit union, or federally regulated investment company, and the institution shall be insured by an agency of the federal government); or if payment cannot be made for any other reason, then the Applicant may appear before the Commission to request an extension of time and the Commission may condition the granting of such extension upon payment of a reasonable sum which shall be paid as an additional bonus to the unleased mineral owner.

2. Participate in the initial well

Participate by paying their proportionate share in the costs of drilling, completing, equipping and operating the initial well, subject to the terms of the JOA, and that each such owner thereafter be bound by the terms of such JOA (whether or not such owner actually executes such agreement), including for purposes of subsequent operations, for so long as there is production of hydrocarbons from within the Unit; or

3. Elect "Non-Consent"

Neither execute a lease nor participate in said costs and become a "Non-Consenting Party" under the JOA with respect to the initial well, and be subject to all of the non-consent provisions thereunder, until the proceeds realized from the sale of such owner's share of production from the initial well, except 1/8th thereof, shall equal the total recoupment amount described in subparagraphs (a) and (b) of Article VI.B.2 of the JOA, with the non-consent penalty under Article VI.B.2(b) being 400% for the initial well and/or 400% for each subsequent well drilled on the Unit. Each such owner shall be bound by the terms of the JOA both before and after recovery of such recoupment amount and also for purposes of proposals for and the conduct of any and all subsequent operations within the Unit, for so long as there is hydrocarbon production from within the Unit. One-eighth (1/8th) of the revenue realized from the sale of such owner's share of production from the initial well, and any subsequent well proposed under the terms of the JOA in which such owner elects not to participate, shall be paid to such mineral interest owner from the date of first production at the times and in the manner prescribed by law for the payment of royalty; or

4. Failure to Make an Election.

Unleased mineral owners who fail to affirmatively elect one of the options listed in 8A above, shall be deemed integrated into the Unit and shall be compensated for the removal of hydrocarbons by the payment of a cash bonus of $2300.00 per net mineral acre, and a 1/8 royalty.

Applicant must tender said lease bonus, subject to any applicable federal or state income tax "backup withholding" provisions,

within thirty (30) days of the expiration period of the "Election Period," described in No. 4 of the Order below; if such payment cannot be made due to issues regarding marketability of title, unknown addresses, or unknown successors in interests, then the Applicant shall pay said bonus into one or more identifiable trust accounts (which shall be accounts in a bank, savings bank, trust company, savings and loan association, credit union, or federally regulated investment company, and the institution shall be insured by an agency of the federal government); or if payment cannot be made for any other reason, then the Applicant may appear before the Commission to request an extension of time and the Commission may condition the granting of such extension upon payment of a reasonable sum which shall be paid as an additional bonus to the unleased mineral owner.

B. <u>Uncommitted Leasehold Working Interest(s) Alternatives:</u>

1. <u>Participate in the well</u>

Participate by paying their proportionate share in the costs of drilling, completing, equipping and operating the initial well, subject to the terms of the JOA, and that each such owner thereafter be bound by the terms of such JOA (whether or not such owner actually executes such agreement), including for purposes of subsequent operations, for so long as there is production of hydrocarbons from within the Unit; or

2. <u>Elect "Non-Consent"</u>

Not participate and become a "Non-Consenting Party" under the JOA with respect to the initial well, and be subject to all of the non-consent provisions thereunder, until the proceeds realized from the sale of hydrocarbons allocable to the mineral interest subject to said parties' leasehold interest(s) in the initial well, exclusive of reasonable leasehold royalty, shall equal the total recoupment amount described in subparagraphs (a) and (b) of Article VI.B.2 of the JOA, with the non-consent penalty under Article VI.B.2(b) being 400% for the initial well, and/or 400% for each subsequent well drilled on the Unit; or

3. <u>Failure to Make an Election</u>

Uncommitted leasehold working interest(s) owners who fail to

timely elect either alternative shall be deemed to have elected Alternative (B2), above.

9. Applicant requests that all parties listed in Finding Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) be required to elect within **fifteen (15) days** after the effective date of the Order, unless, for cause shown, a shorter or longer period is approved. **ALL INTEGRATED PARTIES SHALL NOTIFY CHESAPEAKE EXPLORATION, LLC, ATTN: ARKANSAS LAND DEPARTMENT, P.O. BOX 18496-OKLAHOMA CITY, OK 73154-0496, IN WRITING, OF THE ALTERNATIVE ELECTED.**

10. That the Applicant should be designated to be the operator of the Unit described above.

11. That no objections were filed.

**CONCLUSIONS OF LAW**

1. That due notice of public hearing was given as required by law and that this Commission has jurisdiction over said parties and the matter herein considered.

2. That the land described in Finding No. 1 has been previously established as a drilling unit.

3. That this Commission has authority to grant said application and force pool and integrate the unleased mineral interest(s) and uncommitted leasehold working interest(s) of said parties under the provisions of Act No. 105 of 1939, as amended.

**ORDER**

Now, therefore, it is Ordered that:

1. INTEGRATION

All of the unleased mineral interest(s) and/or uncommitted leasehold working interest(s) described in Finding Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) within the Unit described in Finding No. 1 be and are hereby integrated into one unit for drilling and production purposes.

2. ALLOCATION OF PRODUCTION

The hydrocarbons that are produced and saved from the well or wells assigned to the above described Unit shall be allocated to each separately owned tract embraced therein in the proportion that the acreage of such tract bears to the total acreage in the Unit and shall be considered as if produced from each such tract.

3. OPERATOR TO CHARGE COSTS

The designated operator of the Unit shall have the right to charge to each participating party its proportionate share of the actual expenditures required for the costs of developing and operating the well in the manner set forth in Exhibit "C" of the JOA.

4. ELECTION OF ALTERNATIVES

The owners of the unleased mineral and/or uncommitted leasehold working interests designated in Finding Nos. 5 and/or 6 above (unless dismissed at the request of the Applicant in the Statement of the Case above), in the aforementioned Unit shall have **fifteen (15) days** from the effective date of this order (the "Election Period") to elect one of the alternatives as described in Finding No 8 above. If no such election is made within the Election Period, the owners of unleased mineral interest(s) shall be deemed to have elected under Alternative A4 and uncommitted leasehold working interest(s) owners shall be deemed to have elected under Alternative B3, as described in Finding No 8. Any party choosing to participate or go non-consent or, who by the terms of this Order are deemed non-consent, shall be subject to the election period set forth in the JOA with respect to all subsequent wells drilled on the Unit.

5. RECEIPT OF VALUE OF PRODUCTION

A. Unleased Mineral Interest Owner(s)

In the event the owners of the unleased mineral interest(s) elect Alternative No. A3 (Non-Consent) described in Finding No. 8 above, then the value of the production proceeds attributable to such unleased mineral interest shall be subdivided and paid in accordance with the provisions of Order No. 6 as hereinafter set forth. The value of hydrocarbons produced shall be equal to the proceeds realized from the sale thereof at the well. Upon recoupment by the "Consenting

Parties" (as defined in the JOA) of the total recoupment amount described in Finding No. 8A3 above, the production due the interest(s) of said parties shall be paid to them, their heirs, successors or assigns.

B.   Uncommitted Leasehold Working Interest Owner(s)

In the event an uncommitted leasehold working interest owner under one or more valid lease(s) elects Alternative No. B2 (Non-Consent) described in Finding No. 8 above, the Consenting Parties shall have the right to receive the hydrocarbon production which would otherwise be delivered or paid to such uncommitted leasehold working interest owner under such lease(s) until such time as the proceeds realized from the sale of such production equals the total recoupment amount described in Finding No. 8B2 above.

The leasehold royalty payable during the recoupment period shall be calculated on the basis of the rate or rates provided in each of the leases creating the rights temporarily transferred pending recoupment.

6.   SUBDIVISION OF TRACT ALLOCATION

The revenue realized by the Consenting Parties from the sale of hydrocarbons shall be allocated among the separately owned tracts within the integrated unit and, pending recoupment of the costs and additional sum described at Paragraph No. 5 of this Order, shall be paid to the integrated parties as follows:

A.   Unleased Mineral Interest Owner(s)

Unleased mineral interest owners who have elected under Alternative No. A3 (Non-Consent) described in Finding No. 8 above shall have the total allocation given to the tract subdivided into the working interest and royalty interest portions on the basis of seven-eighths (7/8th) of the total allocation being assigned to the working interest portion and one-eighth (1/8th) of the total allocation being assigned to the royalty interest portion.

B.   Uncommitted Leasehold Working Interest Owner(s)

Leasehold royalty shall be paid according to the provisions of the valid lease(s) existing for each separately owned tract, except where the Commission finds that such lease(s) provide for an excessive, unreasonably high, rate of royalty, as compared with the royalty

determined by the Commission to be reasonable and consistent with the royalty negotiated for lease(s) made at arm's length in the general area where the Unit is located, in which case the royalty stipulated in the second paragraph of Paragraph 5B of this Order shall be payable with respect to such lease(s).

7.   RECORDS OF UNIT OPERATION

The designated Operator shall, upon request and at least monthly, furnish to the other parties any and all information pertaining to wells drilled, production secured and hydrocarbons marketed from the Unit. The books, records and vouchers relating to the operation of the Unit shall be kept open to the non-operators for inspection at reasonable times.

8.   PAYMENT FOR PRODUCTION

During the period of recoupment, the revenue allocable to those owners of the integrated unleased mineral interest(s) who elect Alternative No. A3 (Non-Consent) and to the mineral interest(s) subject to and covered by the integrated uncommitted leasehold working interest(s) whose owners elect or shall be deemed to have elected Alternative No. B2 (Non-Consent), both described in Finding No. 8 above (collectively, the "non-consent interests"), shall be paid to those Consenting Parties that elect to acquire their proportionate share of such non-consent interests pursuant to Paragraph 9 of this Order.

9.   SHARING OF NON-CONSENT INTERESTS

The designated Operator shall offer each Consenting Party in the initial well who executes the JOA, or who elects to participate under this Order, prior to the expiration of the Election Period an opportunity to acquire its proportionate share of all non-consent interests in the initial well pursuant to the terms of Article VI.B.2. of the JOA. The designated Operator shall likewise offer each Consenting Party in the initial well the opportunity to acquire its proportionate share of any leasehold interest acquired by the Applicant as the result of any unleased mineral owner's deemed election under Alternative A4 of Finding No. 8 (collectively, the "A4 Interests"); provided, however, this Paragraph 9 shall not apply to:

(i)  any A4 Interest that is not marketable; or

(ii) any A4 Interest that is less than a perpetual interest in the mineral estate (i.e. a term interest, life estate or remainder interest) and which must be integrated in order to make perpetual an existing leasehold interest in the Unit.

Any A4 Interest described in subpart (ii) of the immediately preceding sentence shall be retained by the Applicant if the Applicant is the owner of the existing leasehold interest which is made perpetual by such A4 Interest. If the Applicant is not the owner of such existing leasehold interest, the Applicant shall tender such A4 Interest to the owner(s) of the existing leasehold interest that is made perpetual by such A4 Interest.

Any Consenting Party electing to acquire a share of any A4 Interests, pursuant to this paragraph, shall notify the Applicant within five business days after receiving an offer from the Applicant indicating the amount of interest available and the cost of that interest, and immediately reimburse the Applicant for such Consenting Party's proportionate share of the lease bonus payable with respect to such A4 Interests.

10.   UNIT OPERATION

The Unit described above shall be operated in accordance with the terms of the JOA and existing rules and regulations and any amendments thereto, of the Arkansas Oil and Gas Commission.

11.   DESIGNATED OPERATOR

The Applicant is hereby designated as operator of and authorized to operate the Unit described above.

12.   SIGNED JOA

The Applicant shall provide all parties, except those parties who elect to lease under Alternative A1 or who are deemed to have elected under Alternative A4, both described in Finding No. 8 above, with signed copies of the JOA as adopted by the Commission which shall include an Exhibit "A" showing a before payout and after payout decimal interest for the effected parties, within 30 days from the end of the election period.

This Order shall be effective from and after October 1, 2008; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order. This Order will automatically terminate under any of the following conditions: well drilling operations have not been commenced within one year after the effective date; or one year following cessation of drilling operations if no production is established; or, within one year from the cessation of production from the unit hereby created.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director of
Production and Conservation

It is so Ordered by the Commission:

Chad White, Chairman
Mike Davis
Kenneth Williams
Carolyn Pollan
William L. Dawkins, Jr.
Jerry Langley

The following Commissioner(s)were voluntarily disqualified:

Bill Poynter

The following Commissioner(s)were absent:

W. Frank Morledge, Vice-Chairman
Charles Wohlford

**ARKANSAS OIL AND GAS COMMISSION**
**301 NATURAL RESOURCES DRIVE**
**SUITE 102**
**LITTLE ROCK, ARKANSAS 72205**

**ORDER NO. 201-2012-08** **September 06, 2012**

**General Rule B-43 Well Spacing Area**
*Cleburne County, Arkansas*

**INTEGRATION OF A DRILLING UNIT**

After due notice and public hearing in Fort Smith, Arkansas, on, the Arkansas Oil and Gas Commission, in order to prevent waste, carry out an orderly program of development and protect the correlative rights of each owner in the common source(s) of supply in this drilling unit, has found the following facts and issued the following Order.

**STATEMENT OF THE CASE**

**XTO Energy, Inc.** (the "Applicant") filed its application for an Order pooling and integrating the unleased mineral interest(s) and/or uncommitted leasehold working interest(s) of certain parties named therein who have failed to voluntarily integrate their interest(s) for the development of the unit comprising of **Section 4, Township 9 North, Range 10 West, Cleburne County, Arkansas.** *This unit was previously integrated in Order No. 211-2010-03; however, this request is for interests not subject to said Order.*

The Applicant presented proof that they had attempted unsuccessfully to acquire voluntary leases and/or other agreements for consideration or on terms equal to that otherwise offered and paid for similar leases or leasehold interest(s) in this drilling unit.

At the request of the Applicant, the following parties were dismissed by the Commission, regardless of whether the party or parties are listed as unleased mineral interest(s) or uncommitted leasehold working interest(s) to be integrated:

NONE

**FINDINGS OF FACT**

From the evidence introduced at said hearing, the Commission finds:

1. That the Applicant **has drilled and completed three wells** in a drilling unit (Unit) that the Commission has previously established, consisting of **Section 4, Township 9 North, Range 10 West, Cleburne County, Arkansas** containing 640 acres, more or less.

2. The Applicant **drilled and completed** such three wells (the "Initial wells") to test the Fayetteville Shale Formation and any intervening formations for the production of hydrocarbons.

3 The requested Model Form Joint Operating Agreement employed by the Applicant and proposed to the owners set out in Finding Nos. 5 and 6 (if any) below, is in the form of A.A.P.L. Form 610-1982 Model Form Operating Agreement (JOA), amended, and modified as adopted by the Commission on October 28, 2008.

4. The requested one-year term oil and gas lease (Lease) employed by the Applicant is in the form of Exhibit "B" of the JOA

5. The unleased mineral interest(s) to be integrated are:

   Lance Allen Heigle; Roy Thomas Heigle; Heirs or Successors of Isaac Lee Heigle, deceased; Sandra Vaughn, individually and as Executrix of the Estate of Isaac Lee Heigle; Claude D. Wallace, individually and as Trustee of the Claude D. Wallace Living Trust;

   and any unknown spouse, heir, devisee, personal representative, successor or assigns of said owners of unleased interests.

6. The uncommitted leasehold working interest(s) to be integrated are:



NONE.

7. The Applicant requests that any parties listed in Findings Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) be integrated.

8. The alternatives for integrated parties are

A. Unleased Mineral Interest(s) Alternatives:

1. Lease

Execute a lease covering the unleased mineral interest(s) with any party upon mutually agreed terms, provided that Applicant receives notice prior to the close of the "Election Period" provided in Paragraph No. 4 of the Order below (lessee would then be bound by the terms of this order as an uncommitted working interest owner, regardless of whether such owner is listed in Finding No. 6 above); or execute and deliver to the Applicant a Lease as identified in Finding No. 4 covering their unleased mineral interest(s) in the aforementioned Unit, for a cash bonus of **$2000.00 per net mineral acre** as fair and reasonable compensation in lieu of the election to participate with a working interest in said Unit and that said Lease(s) provide for a **1/5 royalty**, and that each such owner thereafter be bound by the terms of said Lease, including for purposes of subsequent operations, (whether or not such owner actually executes such Lease) for so long as there is production of hydrocarbons from within the Unit. Applicant must tender said lease bonus, subject to any applicable federal or state income tax "backup withholding" provisions, within thirty (30) days of the date an election is made; if such payment cannot be made due to issues regarding marketability of title, unknown addresses, or unknown successors in interests, then the Applicant shall pay said bonus into one or more identifiable trust accounts (which shall be accounts in a bank, savings bank, trust company, savings and loan association, credit union, or federally regulated investment company, and the institution shall be insured by an agency of the federal government); or if payment cannot be made for any other reason, then the Applicant may appear before the Commission to request an extension of time and the Commission may condition the granting of such extension upon payment of a reasonable sum which shall be paid as an additional bonus to the unleased mineral owner.

2. Participate in the initial wells

Participate by paying their proportionate share in the costs of drilling, completing, equipping and operating the initial wells, subject to the terms of the JOA, and that each such owner thereafter be bound by the terms of such JOA (whether or not such owner actually executes such agreement), including for purposes of subsequent operations, for so long as there is production of hydrocarbons from within the Unit; or

3. Elect "Non-Consent"

Neither execute a lease nor participate in said costs and become a "Non-Consenting Party" under the JOA with respect to the initial wells, and be subject to all of the non-consent provisions thereunder, until the proceeds realized from the sale of such owner's share of production from the initial wells, except 1/8th thereof, shall equal the total recoupment amount described in subparagraphs (a) and (b) of Article VI.B.2 of the JOA, with the non-consent penalty under Article VI.B.2(b) being **100%** for the initial wells and/or **400%** for each subsequent well drilled on the Unit. Each such owner shall be bound by the terms of the JOA both before and after recovery of such recoupment amount and also for purposes of proposals for and the conduct of any and all subsequent operations within the Unit, for so long as there is hydrocarbon production from within the Unit. One-eighth (1/8th) of the revenue realized from the sale of such owner's share of production from the initial wells, and any subsequent well proposed under the terms of the JOA in which such owner elects not to participate, shall be paid to such mineral interest owner from the date of first production at the times and in the manner prescribed by law for the payment of royalty; or

4. Failure to Make an Election.

***Unleased mineral owners who fail to affirmatively elect one of the options listed in 8A above, shall be deemed to have elected Alternative (A3) above.***

B. Uncommitted Leasehold Working Interest(s) Alternatives:

1. Participate in the well

Participate by paying their proportionate share in the costs of drilling, completing, equipping and operating the initial wells, subject to the terms of the JOA, and that each such owner thereafter be bound by the terms of such JOA (whether or not such owner actually executes such agreement), including for purposes of subsequent operations, for so long as there is production of hydrocarbons from within the Unit; or

2. Elect "Non-Consent"

Not participate and become a "Non-Consenting Party" under the JOA with respect to the initial wells, and be subject to all of the non-consent provisions thereunder, until the proceeds realized from the sale of hydrocarbons allocable to the mineral interest subject to said parties' leasehold interest(s) in the initial wells, exclusive of reasonable leasehold royalty, shall equal the total recoupment amount described in subparagraphs (a) and (b) of Article VI.B.2 of the JOA, with the non-consent penalty under Article VI.B.2(b) being **100%** for the initial wells, and/or **400%** for each subsequent well drilled on the Unit; or

3. Failure to Make an Election

Uncommitted leasehold working interest(s) owners who fail to timely elect either alternative shall be deemed to have elected Alternative (B2), above.

9. Applicant requests that all parties listed in Finding Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) be required to elect within **fifteen (15) days** after the effective date of the Order, unless, for cause shown, a shorter or longer period is approved. **ALL INTEGRATED PARTIES SHALL NOTIFY XTO ENERGY, INC., 810 HOUSTON ST. FORT WORTH, TX 76102, IN WRITING, OF THE ALTERNATIVE ELECTED.**

10. That Seeco, Inc. has been designated to be the operator of the Unit described above.

11. That a written objection was filed by Keith Grayson on behalf of his clients: Lance Allen Heigle; Roy Thomas Heigle; Heirs or Successors of Isaac Lee Heigle, deceased; Sandra Vaughn, individually and as Executrix of the Estate of Isaac Lee Heigle; Claude D. Wallace, individually and as Trustee of the Claude D. Wallace Living Trust,

**CONCLUSIONS OF LAW**

1. That due notice of public hearing was given as required by law and that this Commission has jurisdiction over said parties and the matter herein considered.

2 That the land described in Finding No. 1 has been previously established as a drilling unit.

3. That this Commission has authority to grant said application and force pool and integrate the unleased mineral interest(s) and uncommitted leasehold working interest(s) of said parties under the provisions of Act No. 105 of 1939, as amended.

**ORDER**

Now, therefore, it is Ordered that:

1. INTEGRATION

All of the unleased mineral interest(s) and/or uncommitted leasehold working interest(s) described in Finding Nos. 5 and/or 6 (unless dismissed at the request of the Applicant in the Statement of the Case above) within the Unit described in Finding No. 1 be and are hereby integrated into one unit for drilling and production purposes.

2. ALLOCATION OF PRODUCTION

The hydrocarbons that are produced and saved from the well or wells assigned to the above described Unit shall be allocated to each separately owned tract embraced therein in the proportion that the acreage of such tract bears to the total acreage in the Unit and shall be considered as if produced from each such tract.

3. OPERATOR TO CHARGE COSTS

The designated operator of the Unit shall have the right to charge to each participating party its proportionate share of the actual expenditures required for the costs of developing and operating the well in the manner set forth in Exhibit "C" of the JOA.

4. ELECTION OF ALTERNATIVES

The owners of the unleased mineral and/or uncommitted leasehold working interests designated in Finding Nos. 5 and/or 6 above (unless dismissed at the request of the Applicant in the Statement of the Case above), in the aforementioned Unit shall have **fifteen (15) days** from the effective date of this order (the "Election Period") to elect one of the alternatives as described in Finding No. 8 above. If no such election is made within the Election Period, the owners of unleased mineral interest(s) shall be deemed to have elected under Alternative A4 and uncommitted leasehold working interest(s) owners shall be deemed to have elected under Alternative B3, as described in Finding No. 8. Any party choosing to participate or go non-consent or, who by the terms of this Order are deemed non-consent, shall be subject to the election period set forth in the JOA with respect to all subsequent wells drilled on the Unit.

5. RECEIPT OF VALUE OF PRODUCTION

A. Unleased Mineral Interest Owner(s)

***In the event the owners of the unleased mineral interest(s) elect Alternative No. A3 (Non-Consent) described in Finding No. 8 above, or are deemed to make an election under Alternative No. A4 described in Finding No. 8 above, then the value of the production proceeds attributable to such unleased mineral interest shall be subdivided and paid in accordance with the provisions of Order No. 6 as hereinafter set forth. The value of hydrocarbons produced shall be equal to the proceeds realized from the sale thereof at the well. Upon recoupment by the "Consenting Parties" (as defined in the JOA) of the total recoupment amount described in Finding No. 8A3 above, the production due the interest(s) of said parties shall be paid to them, their heirs, successors or assigns.***

B. Uncommitted Leasehold Working Interest Owner(s)

In the event an uncommitted leasehold working interest owner under one or more valid lease(s) elects Alternative No. B2 (Non-Consent) described in Finding No. 8 above, the Consenting Parties shall have the right to receive the hydrocarbon production which would otherwise be delivered or paid to such uncommitted leasehold working interest owner under such lease(s) until such time as the proceeds realized from the sale of such production equals the total recoupment amount described in Finding No. 8B2 above.

The leasehold royalty payable during the recoupment period shall be calculated on the basis of the rate or rates provided in each of the leases creating the rights temporarily transferred pending recoupment.

6 SUBDIVISION OF TRACT ALLOCATION

The revenue realized by the Consenting Parties from the sale of hydrocarbons shall be allocated among the separately owned tracts within the integrated unit and, pending recoupment of the costs and additional sum described at Paragraph No. 5 of this Order, shall be paid to the integrated parties as follows:

A. Unleased Mineral Interest Owner(s)

***Unleased mineral interest owners, who have elected under Alternative No. A3 (Non-Consent) described in Finding No. 8 above, or who are deemed to make an election under Alternative No. A4 described in Finding No. 8 above, shall have the total allocation given to the tract subdivided into the working interest and royalty interest portions on the basis of seven-eighths (7/8th) of the total allocation being assigned to the working interest portion and one-eighth (1/8th) of the total allocation being assigned to the royalty interest portion.***

B. Uncommitted Leasehold Working Interest Owner(s)

Leasehold royalty shall be paid according to the provisions of the valid lease(s) existing for each separately

owned tract, except where the Commission finds that such lease(s) provide for an excessive, unreasonably high, rate of royalty, as compared with the royalty determined by the Commission to be reasonable and consistent with the royalty negotiated for lease(s) made at arm's length in the general area where the Unit is located, in which case the royalty stipulated in the second paragraph of Paragraph 5B of this Order shall be payable with respect to such lease(s).

7. RECORDS OF UNIT OPERATION

The designated Operator shall, upon request and at least monthly, furnish to the other parties any and all information pertaining to wells drilled, production secured and hydrocarbons marketed from the Unit. The books, records and vouchers relating to the operation of the Unit shall be kept open to the non-operators for inspection at reasonable times.

8. PAYMENT FOR PRODUCTION

***During the period of recoupment, the revenue allocable to those owners of the integrated unleased mineral interest(s) who elect Alternative No. A3 (Non-Consent), or who are deemed to make an election under Alternative No. A4 described in Finding No. 8 above, and to the mineral interest(s) subject to and covered by the integrated uncommitted leasehold working interest(s) whose owners elect or shall be deemed to have elected Alternative No. B2 (Non-Consent), both described in Finding No. 8 above (collectively, the "non-consent interests"), shall be paid to those Consenting Parties that elect to acquire their proportionate share of such non-consent interests pursuant to Paragraph 9 of this Order.***

9. SHARING OF NON-CONSENT INTERESTS

The designated Operator shall offer each Consenting Party in the initial wells who executes the JOA, or who elects to participate under this Order, prior to the expiration of the Election Period an opportunity to acquire its proportionate share of all non-consent interests in the initial wells pursuant to the terms of Article VI.B.2. of the JOA.

10. UNIT OPERATION

The Unit described above shall be operated in accordance with the terms of the JOA and existing rules and regulations and any amendments thereto, of the Arkansas Oil and Gas Commission.

11. DESIGNATED OPERATOR

That SEECO, Inc. is designated as operator of and authorized to operate the Unit described above.

12. SIGNED JOA

***The Applicant shall provide all parties, except those parties who elect to lease under Alternative A1, described in Finding No. 8 above, with signed copies of the JOA as adopted by the Commission which shall include an Exhibit "A" showing a before payout and after payout decimal interest for the effected parties, within 30 days from the end of the election period.***

This Order shall be effective from and after **September 06, 2012**; and the Commission shall have continuing jurisdiction for the purposes of enforcement, and/or modifications or amendments to the provisions of this Order. This Order will automatically terminate under any of the following conditions: well drilling operations have not been commenced within one year after the effective date; or one year following cessation of drilling operations if no production is established; or, within one year from the cessation of production from the unit.

ARKANSAS OIL AND GAS COMMISSION

Lawrence E. Bengal
Director

**Statement of Oil & Gas Payments**
**for**
**CLAUDE D WALLACE**

SEECO, INC.
ATTN: REVENUE ACCOUNTING
2350 N SAM HOUSTON PKWY E
HOUSTON TX 77032-0000
(866) 322-0801

**Royalty Account**

| [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| 346575 | 100160062 | 03/25/2013 | $1,555.79 |

| Prod mm-yy | Product | Payor Interest type | BTU Factor | Share | Lease Interest | Settlement Interest | Volume MCF/BBL | Price $ | Value $ | Severance | Code | Production | Code | Compression CC/CM | Gathering GA | Treating TT | Marketing MC | Other | Code | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **206501001A / ABBOTT 9-10 1-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 08-11 | GAS | Bp | | Gross | | | | | -139 52 | -558 40 | SV | | | | | | | -8 16 | TR | 427 04 |
| 08-11 | | Roy Int | | Owner | 0 00252611 | 0 00252611 | | | -0 36 | -1 42 | SV | | | | | | | -0 02 | TR | 1 09 |
| Owner Subtotal for Period: 08-11 | | | | | | | | | -0.36 | -1.42 | | | | | | | | -0.02 | | 1.08 |
| 12-12 | GAS | Xto | | Gross | | | 3,158 00 | 2 63 | 8,302 24 | 124 56 | SV | 28 40 | VT | | | | | | | 8,149 28 |
| 12-12 | | Roy Int | | Owner | 0.00252611 | 0 00252611 | 7.98 | | 20 99 | 0 31 | SV | 0 07 | VT | | | | | | | 20 61 |
| 12-12 | GAS | Bp | | Gross | | | 1,177 04 | 3.62 | 4,257 28 | 47 04 | SV | | | | | | | 409 76 | TR | 3,800 48 |
| 12-12 | | Roy Int | | Owner | 0 00252611 | 0 00252611 | 2 98 | | 10 77 | 0 12 | SV | | | | | | | 1 03 | TR | 9 62 |
| 12-12 | GAS | Bhp | | Gross | | | 3,960 88 | 3 43 | 13,604 64 | 179 44 | SV | | | | | | | 3,818 64 | PP | 9,606 56 |
| 12-12 | | Roy Int | | Owner | 0 00252611 | 0.00252611 | 10 01 | | 34 40 | 0 46 | SV | | | | | | | 9 65 | PP | 24 29 |
| Owner Subtotal for Period: 12-12 | | | | | | | 20.97 | | 66.16 | 0.89 | | 0.07 | | | | | | 10.68 | | 54.52 |
| 01-13 | GAS | Sse | | Gross | | | 27,133 30 | 2 91 | 79,037 13 | 907 55 | HC | | | [illegible]163 45 | 15,031.49 | | 1,338 75 | | | 59,595 59 |
| 01-13 | | Roy Int | | Owner | 0 00252611 | 0 00252611 | 68 60 | | 199 82 | 2 29 | HC | | | 5 47 | 38 00 | | | | | 154 06 |
| Owner Subtotal for Period: 01-13 | | | | | | | 68.60 | | 199.82 | 2.29 | | | | 5.47 | 38.00 | | | | | 154.06 |
| Owner Total Net for Property: | | | | | | | 98.57 | | 265.63 | 1.76 | | 0.07 | | 5.47 | 38.00 | | | 10.66 | | 209.67 |
| **206503001A / PEARCE 09-10 #2-4H33** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 08-11 | GAS | Bp | | Gross | | | | | -73 20 | -292 72 | SV | | | | | | | -4 24 | TR | 223 76 |
| 08-11 | | Roy Int | | Owner | 0.00111760 | 0 00111760 | | | -0 08 | -0 33 | SV | | | | | | | -0 01 | TR | 0 26 |
| Owner Subtotal for Period: 08-11 | | | | | | | | | -0.08 | -0.33 | | | | | | | | -0.01 | | 0.26 |
| 12-12 | GAS | Xto | | Gross | | | 3,831 92 | 2.61 | 9,996 72 | 150 00 | SV | 34 48 | VT | | | | | | | 9,812 24 |
| 12-12 | | Roy Int | | Owner | 0 00111760 | 0 00111760 | 4 28 | | 11 17 | 0 16 | SV | 0 04 | VT | | | | | | | 10 97 |
| 12-12 | GAS | Bp | | Gross | | | 602 00 | 3 59 | 2,163 52 | 23 92 | SV | | | | | | | 208 24 | TR | 1,931 36 |
| 12-12 | | Roy Int | | Owner | 0 00111760 | 0 00111760 | 0 67 | | 2 42 | 0 03 | SV | | | | | | | 0 23 | TR | 2 16 |
| 12-12 | GAS | Bhp | | Gross | | | 6,487 04 | 3 41 | 22,113 75 | 297 04 | SV | | | | | | | 6,207 12 | PP | 15,609 59 |
| 12-12 | | Roy Int | | Owner | 0 00111760 | 0 00111760 | 7 25 | | 24 72 | 0.33 | SV | | | | | | | 6 94 | PP | 17 45 |
| Owner Subtotal for Period: 12-12 | | | | | | | 12.20 | | 38.31 | 0.52 | | 0.04 | | | | | | 7.17 | | 30.58 |
| 01-13 | GAS | Sse | | Gross | | | 12,580.20 | 2 89 | 36,393 96 | 417 12 | HC | | | 994 94 | 6,974.50 | | 616 45 | | | 27,390 95 |
| 01-13 | | Roy Int | | Owner | 0.00111760 | 0 00111760 | 14 07 | | 40 67 | 0 47 | HC | | | 1 11 | 7 80 | | | | | 31 29 |
| Owner Subtotal for Period: 01-13 | | | | | | | 14.07 | | 40.67 | 0.47 | | | | 1.11 | 7.80 | | | | | 31.29 |
| Owner Total Net for Property: | | | | | | | 26.27 | | 78.90 | 0.66 | | 0.04 | | 1.11 | 7.80 | | | 7.16 | | 62.13 |
| **206771001A / PEARCE 9-10 1-4H A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | Xto | | Gross | | | 12,510 96 | 2 63 | 32,923 66 | 493 84 | SV | 112 84 | VT | | | | | | | 32,317 20 |
| 12-12 | | Roy Int | | Owner | 0 00783182 | 0.00783182 | 97 98 | | 257 85 | 3 87 | SV | 0 88 | VT | | | | | | | 253 10 |
| 12-12 | GAS | Bp | | Gross | | | 1,279 04 | 3 62 | 4,635 04 | 51 20 | SV | | | | | | | 446 08 | TR | 4,137 76 |
| 12-12 | | Roy Int | | Owner | 0 00783182 | 0 00783182 | 10 02 | | 36 30 | 0 40 | SV | | | | | | | 3 49 | TR | 32 41 |
| 12-12 | GAS | Bhp | | Gross | | | 5,462 00 | 3 44 | 18,779 12 | 251 84 | SV | | | | | | | 5,271 04 | PP | 13,256 24 |
| 12-12 | | Roy Int | | Owner | 0 00783182 | 0 00783182 | 42 78 | | 147 08 | 1.98 | SV | | | | | | | 41 28 | PP | 103 82 |
| Owner Subtotal for Period: 12-12 | | | | | | | 150.78 | | 441.23 | 6.25 | | 0.88 | | | | | | 44.77 | | 389.33 |
| 01-13 | GAS | Sse | | Gross | | | 15,657 20 | 2 92 | 45,646 19 | 524 30 | HC | | | 1 247 92 | 8,673 72 | | 773.20 | | | 34,429 05 |
| 01-13 | | Roy Int | | Owner | 0.00783182 | 0.00783182 | 122 63 | | 357 51 | 4 11 | HC | | | 9 77 | 67 93 | | | | | 275 70 |
| Owner Subtotal for Period: 01-13 | | | | | | | 122.63 | | 357.51 | 4.11 | | | | 9.77 | 67.93 | | | | | 275.70 |
| Owner Total Net for Property: | | | | | | | 273.41 | | 798.74 | 10.36 | | 0.88 | | 9.77 | 67.93 | | | 44.77 | | 665.03 |

# Statement of Oil & Gas Payments
for
CLAUDE D WALLACE

SEECO, INC.
ATTN: REVENUE ACCOUNTING
2350 N SAM HOUSTON PKWY E
HOUSTON TX 77032-0000
(866) 322-0801

**Royalty Account**

| | | | |
|---|---|---|---|
| 346575 | 100180062 | 03/25/2013 | $1,595.79 |

| Property Number / Property Name | | | | | | | State / County | | | Taxes | | | | Deductions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prod mm-yy | Product | Payee/ Interest type | BTU Factor | Share | Lease Interest | Settlement Interest | Volume MCF/BBL | Price $ | Value $ | Severance | Code | Production | Code | Compression CC/CM | Gathering GA | Treating TT | Marketing MC | Other | Code | Net Value |
| **210461001A / ABBOTT 9-10 4-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | See | | Gross | | | 44,670.80 | 3.21 | 143,559.52 | 1,890.73 | HC | | | 3,691.92 | 24,745.88 | | 2,208.30 | | | 111,024.71 |
| 12-12 | | Roy Int | | Owner | 0.00103051 | 0.00103051 | 46.03 | | 147.94 | 1.74 | HC | | | 4.01 | 25.51 | | | | | 116.68 |
| Owner Subtotal for Period: 12-12 | | | | | | | 46.03 | | 147.94 | 1.74 | | | | 4.01 | 25.51 | | | | | 116.68 |
| 01-13 | GAS | See | | Gross | | | 31,626.60 | 2.92 | 92,223.25 | 1,059.48 | HC | | | 2,505.60 | 17,523.63 | | 1,662.10 | | | 69,572.44 |
| 01-13 | | Roy Int | | Owner | 0.00103051 | 0.00103051 | 32.59 | | 95.04 | 1.09 | HC | | | 2.58 | 18.06 | | | | | 73.31 |
| Owner Subtotal for Period: 01-13 | | | | | | | 32.59 | | 95.04 | 1.09 | | | | 2.58 | 18.06 | | | | | 73.31 |
| Owner Total Net for Property: | | | | | | | 78.62 | | 242.98 | 2.83 | | | | 6.59 | 43.57 | | | | | 189.99 |
| **210462001A / ABBOTT 9-10 6-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | See | | Gross | | | 34,333.20 | 3.21 | 110,352.08 | 1,299.69 | HC | | | 2,868.28 | 19,021.77 | | 1,695.95 | | | 85,346.39 |
| 12-12 | | Roy Int | | Owner | 0.00109488 | 0.00109488 | 37.59 | | 120.83 | 1.42 | HC | | | 3.27 | 20.83 | | | | | 95.31 |
| Owner Subtotal for Period: 12-12 | | | | | | | 37.59 | | 120.83 | 1.42 | | | | 3.27 | 20.83 | | | | | 95.31 |
| 01-13 | GAS | See | | Gross | | | 32,063.00 | 2.92 | 93,495.54 | 1,074.14 | HC | | | 2,540.18 | 17,762.22 | | 1,583.65 | | | 70,535.35 |
| 01-13 | | Roy. Int | | Owner | 0.00109488 | 0.00109488 | 35.10 | | 102.37 | 1.17 | HC | | | 2.78 | 19.45 | | | | | 78.97 |
| Owner Subtotal for Period: 01-13 | | | | | | | 35.10 | | 102.37 | 1.17 | | | | 2.78 | 19.45 | | | | | 78.97 |
| Owner Total Net for Property: | | | | | | | 72.69 | | 223.20 | 2.59 | | | | 6.05 | 40.28 | | | | | 174.28 |
| **210463001A / ABBOTT 9-10 5-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | See | | Gross | | | 20,342.80 | 3.21 | 65,370.57 | 769.85 | HC | | | 1,772.23 | 11,270.18 | | 1,004.65 | | | 50,553.66 |
| 12-12 | | Roy. Int | | Owner | 0.00106859 | 0.00106859 | 21.74 | | 69.85 | 0.82 | HC | | | 1.89 | 12.04 | | | | | 55.10 |
| Owner Subtotal for Period: 12-12 | | | | | | | 21.74 | | 69.85 | 0.82 | | | | 1.89 | 12.04 | | | | | 55.10 |
| 01-13 | GAS | See | | Gross | | | 24,347.60 | 2.92 | 70,987.28 | 815.59 | HC | | | 1,923.84 | 13,468.51 | | 1,202.40 | | | 53,556.94 |
| 01-13 | | Roy Int | | Owner | 0.00106859 | 0.00106859 | 26.02 | | 75.85 | 0.87 | HC | | | 2.05 | 14.42 | | | | | 58.51 |
| Owner Subtotal for Period: 01-13 | | | | | | | 26.02 | | 75.85 | 0.87 | | | | 2.05 | 14.42 | | | | | 58.51 |
| Owner Total Net for Property: | | | | | | | 47.76 | | 145.70 | 1.69 | | | | 3.94 | 26.46 | | | | | 113.61 |
| **210464001A / ABBOTT 9-10 3-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | See | | Gross | | | 20,799.20 | 3.21 | 66,821.57 | 786.91 | HC | | | 1,811.52 | 11,522.39 | | 1,026.95 | | | 51,673.80 |
| 12-12 | | Roy Int | | Owner | 0.00060172 | 0.00060172 | 12.52 | | 40.21 | 0.47 | HC | | | 1.09 | 6.93 | | | | | 31.72 |
| Owner Subtotal for Period: 12-12 | | | | | | | 12.52 | | 40.21 | 0.47 | | | | 1.09 | 6.93 | | | | | 31.72 |
| 01-13 | GAS | See | | Gross | | | 26,222.80 | 2.91 | 76,436.50 | 878.04 | HC | | | 2,079.28 | 14,526.54 | | 1,294.70 | | | 57,657.98 |
| 01-13 | | Roy Int | | Owner | 0.00060172 | 0.00060172 | 15.78 | | 45.99 | 0.53 | HC | | | 1.26 | 8.74 | | | | | 35.46 |
| Owner Subtotal for Period: 01-13 | | | | | | | 15.78 | | 45.99 | 0.53 | | | | 1.26 | 8.74 | | | | | 35.46 |
| Owner Total Net for Property: | | | | | | | 28.30 | | 86.20 | 1.00 | | | | 2.35 | 15.67 | | | | | 67.18 |
| **2501122672 / ABBOTT 9-10 2-9H4 A** | | | | | | | **ARKANSAS / CLEBURNE** | | | | | | | | | | | | | |
| 12-12 | GAS | See | | Gross | | | 43,483.50 | 3.21 | 139,792.10 | 1,646.49 | HC | | | 3,789.77 | 24,087.88 | | 2,148.40 | | | 108,119.56 |
| 12-12 | | Roy Int | | Owner | 0.00054442 | 0.00054442 | 23.68 | | 76.10 | 0.89 | HC | | | 2.07 | 13.12 | | | | | 60.02 |
| Owner Subtotal for Period: 12-12 | | | | | | | 23.68 | | 76.10 | 0.89 | | | | 2.07 | 13.12 | | | | | 60.02 |
| 01-13 | GAS | See | | Gross | | | 43,998.00 | 2.92 | 128,324.98 | 1,474.29 | HC | | | 3,490.60 | 24,374.74 | | 2,173.60 | | | 96,811.55 |
| 01-13 | | Roy Int | | Owner | 0.00054442 | 0.00054442 | 23.96 | | 69.86 | 0.81 | HC | | | 1.90 | 13.27 | | | | | 53.88 |
| Owner Subtotal for Period: 01-13 | | | | | | | 23.96 | | 69.86 | 0.81 | | | | 1.90 | 13.27 | | | | | 53.88 |

**Statement of Oil & Gas Payments**
**for**
**CLAUDE D WALLACE**

SEECO, INC.
ATTN: REVENUE ACCOUNTING
2350 N SAM HOUSTON PKWY E
HOUSTON TX 77032-0000
(866) 322-0801

**Royalty Account**

| [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| 346575 | 100180062 | 03/25/2013 | $1,595.79 |

| Property Number / Property Name | | | | | | | State / County | | | Taxes | | | | Deductions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prod mm-yy | Product | Payee/ Interest type | BTU Factor | Share | Lease Interest | Settlement Interest | Volume MCF/BBL | Price $ | Value $ | Severance | Code | Production | Code | Compression CC/CM | Gathering GA | Treating TT | Marketing MC | Other | Code | Net Value |
| Owner Total Net for Property: | | | | | | | 47.84 | | 145.96 | 1.70 | | | | 3.97 | 26.39 | | | | | 113.90 |

00731610803



# OWNER REMITTANCE ADVICE

BHP BILLITON PETROLEUM
LAND ADMINISTRATION
P.O. BOX 22710
HOUSTON, TEXAS 77027-0990

877-311-1443
Email Address:
PetroleumOwnerRelationsRequest@BHPBilliton.com

Page 1 of 6

160830 0421 1 000034 000233 001/006
JOE G & JO L RATH
2300 RIVER BEND RD
HEBER SPRINGS AR 72543-0000

| | |
|---|---|
| Owner Number: | 80001590 |
| Check Number: | C000680594 |
| Check Amount: | $110.42 |
| Check Date: | 06/30/2013 |

## DEFINITION OF OIL & GAS PAYMENTS

**PRODUCT CODES**

100 Oil (BBLS)
103 Skim/Scrub/Drip Oil (BBLS)
200 All Gas Products (MCF)
201 Gas Well Gas (MCF)
202 Casinghead Gas (MCF)
203 Wet Gas (MCF)
204 Residue Gas (MCF)
206 Flash Gas (MCF)
207 Extracted Carbon Dioxide (MCF)
300 Condensate (BBLS)
303 Skim/Scrub/Drip Condensate (BBLS)
400 All Plant Products (Gals)
401 Ethane - C2 (Gals)
403 Propane - C3 (Gals)
406 Iso-Butane - IC4 (Gals)
407 Normal Butane - NC4 (Gals)
409 Natural Gasoline - C5+ (Gals)
40C Misc. Plant Condensate (Gals)

**VOLUME TYPES**

03 Sales

**INTEREST TYPES**

BI Billing Interest
BL Blanchard Interest
CR Compensatory Royalty
CW Carried Working Interest
MI Unleased Mineral Interest
NP Net Profits
OC Override Convertible
OO Other Operator
OR Overriding Royalty
OU Override (Unsigned)
OW Override Working Int
PP Production Payment
PR Partnership
RI Royalty Interest
RO Reversionary Royalty
RT Royalty TIK
RU Royalty (Unsigned)
UK Unleased (Known)
UU Unleased (Unknown)
WI Working Interest
WR Working (Other)

**ADJUSTMENT CODES**

CN Conservation Tax
EB Environmental Tax
FP Federal Pollution Tax
PR Production Tax
RF Restoration Fee
SV Severance Tax
UI Unclassified Tax
WP Windfall Profits Tax
E1 External Compression
E2 External Dehydration
E3 External Treating
E4 External Gathering
E5 External Transportation/MF
E6 External Transportation/Royalty Deducts
E7 External Fuel
E8 External Service Fee Marketing
E9 External Service Fee Accounting
E0 External Other
I1 Internal Compression
I2 Internal Dehydration
I3 Internal Treating
I4 Internal Gathering
I5 Internal Transportation/MF
I6 Internal Transportation/Royalty Deducts
I7 Internal Fuel
I8 Internal Service Fee Marketing
I9 Internal Service Fee Accounting
I0 Internal Other

**LEGEND CODES**

IE Interest Payment
10 NRA/ Back-up Withholding
17 Miscellaneous
A3 Special Payments / Settlements
CO Check Received from Owner
EP Escrow Payment
LV Levies
NB Negative Balance Elimination
XX Before PRA Recording
02 Ad Valorem Direct Recovery
03 Ad Valorem Accrual
11 Excess Royalty Reimbursement
12 State Tax Withheld
15 Compensatory Royalty

**CHECK STUB DETAIL**

| | |
|---|---|
| Production Date | Month/Year production was sold |
| Product Code | Type of product sold |
| Vol Type | Type of volume sold |
| LC | Legend Code, special distribution indicator |
| **GROSS INFORMATION** | |
| Gross Volume | Sales Volume |
| Price | Calculated by dividing Sales Value by Sales Volume |
| Quality | Heating value of the gas used to convert MCF (1000 cubic feet) to MMBTU (MCF x BTU) |
| Gross Value | Sales Value |
| Adjustment Code | Code associated with the detailed breakdown of tax and marketing cost |
| Adjustments | Adjustments - detailed breakdown of total tax and marketing cost deducted from gross value |
| Net Value | Gross Value minus Adjustments |
| **OWNER INFORMATION** | |
| Dist Dec | Owner's share of the remitter's marketed volumes |
| Owner Dec | Record Title Ownership Percent |
| Int Type & Seq | Type and Sequence of interest being paid |
| Remitter | The remitting company if not BHP Billiton |
| Net Volume | Sales Volume x Disbursement Decimal |
| Gross Value | Sales Value x Disbursement Decimal |
| Adjustments | Adjustments - detailed breakdown of total tax and marketing cost deducted from owner gross value |
| Net Value | Owner's Gross Value minus Owner's Adjustments |



# OWNER REMITTANCE ADVICE

BHP BILLITON PETROLEUM
LAND ADMINISTRATION
P.O. BOX 22719
HOUSTON, TEXAS 77027-9998

877-311-1443
Email Address:
PetroleumOwnerRelationsRequest@BHPBilliton.com

[illegible]
JOE G & JO L RATH
2309 RIVER BEND RD
HEBER SPRINGS AR 72543-0000

| | |
|---|---|
| Owner Number: | 80001590 |
| Check Number: | C000600594 |
| Check Amount: | $110.42 |
| Check Date: | 06/30/2013 |

| Production Date | Product Code | Vol Type | LC | GROSS AMOUNTS Gross Volume | Price | Quality | Gross Value | Adjustments | Net Value | OWNER AMOUNTS Stlmt Dec / Owner Dec | Int. Type/Seq. /Rate | Net Volume | Owner Value | Adjustments | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | [illegible] | BP AMERICA PROD CO (AR) | | | | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | [illegible] | SEECO INC | | | | |
| | | | UE | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | [illegible] | BP AMERICA PROD CO (AR) | | | | |
| [illegible] | [illegible] | [illegible] | | 332.59 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.59 | $2.16 | $0.02- | $2.14 |
| | | | | | | | | | | [illegible] | SEECO INC | | | | |
| | | | UE | | | | | [illegible] | | | | | | $0.02- | |
| [illegible] | [illegible] | [illegible] | | 1,124.36 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.32 | $1.16 | [illegible] | $1.16 |
| | | | | | | | | | | [illegible] | BP AMERICA PROD CO (AR) | | | | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | [illegible] | [illegible] | | | | |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | BB | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | [illegible] | J/V TB - Other Owner | | | | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |



BHP BILLITON PETROLEUM (FAYETTEVILLE) LLC
TBM, LAND ADMINISTRATION
4A POST OAK BLVD.
HOUSTON, TEXAS 77056-3020

**OWNER REMITTANCE ADVICE**

877-311-1043
Email Address:
PetroleumOwnerRelationsRequests@BHPBilliton.com

Page 3 of 6

DE G.&.JO L. RATH
300 RIVER BEND RD
HEBER SPRINGS AR 72543-0000

| | |
|---|---|
| Owner Number: | 30001390 |
| Check Number: | C0006600594 |
| Check Amount: | $190.42 |
| Check Date: | 06/30/2013 |

| | | | | GROSS AMOUNTS | | | | | | OWNER AMOUNTS | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Production Date | Product Code | Vol Type | I.C. | Gross Volume | Price | Quality | Gross Value | Adjustments | Net Value | Disb Date / Owner Dec | Int Type/Disp'l Basis | Net Volume | Gross Value | Adjustments | Net Value |

*(Remainder of table data is illegible due to scan quality.)*

BHP BILLITON PETROLEUM (FAYETTEVILLE) LLC
ATTN: LAND ADMINISTRATION
1360 POST OAK BLVD.
HOUSTON, TEXAS 77056-3030

# OWNER REMITTANCE ADVICE

877-311-4443
Email Address:
PetroleumOwnerRelationsRequest@BHPBilliton.com

160839 0821 1 000834 000238 004/006
JOE G & JO L RATH
2309 RIVER BEND RD
HEBER SPRINGS AR 72543-0000

Owner Number: 80001590
Check Number: C000680594
Check Amount: $110.42
Check Date: 06/30/2013

| | | | | GROSS AMOUNTS | | | | | | OWNER AMOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Production Date | Product Code | Vol Type | LC | Gross Volume | Price | Quality | Gross Value | Adjustments | Net Value | Dist Dec / Owner Dec | Int. Type/Seq / Stmt | Net Volume | Gross Value | Adjustments | Net Value |
| 04/2013 | 305 | 80 | | 4,231.00 | [illegible] | 1025.230 | [illegible] | $558.87- | $15,044.22 | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.33 | $4.38 | $0.15- | $4.23 |
| | | | SV | | | | | $516.36- | | | | | | $0.14- | |
| | | | CN | | | | | $42.51- | | | | | | $0.01- | |
| 04/2013 | 305 | 80 | | 2,[illegible] | [illegible] | 1025.230 | $0.00 | $25.58- | $25.58- | [illegible] JV Trk - Other Owner | RI 01 | 0.80 | $0.00 | $0.01- | $0.01- |
| | | | CN | | | | | $25.58- | | | | | | $0.01- | |
| 05/2013 | 305 | 80 | | 4,[illegible] | [illegible] | [illegible] | [illegible] | $543.38- | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.32 | $4.33 | $0.15- | $4.18 |
| | | | SV | | | | | $500.31- | | | | | | $0.14- | |
| | | | CN | | | | | $42.33- | | | | | | $0.01- | |
| 05/2013 | 305 | 80 | | 2,[illegible] | [illegible] | [illegible] | $0.00 | $25.41- | $25.41- | [illegible] JV Trk - Other Owner | RI 01 | 0.79 | $0.00 | $0.01- | $0.01- |
| | | | CN | | | | | $25.41- | | | | | | $0.01- | |
| 05/2013 | 305 | 80 | | [illegible] | [illegible] | 1.000 | $0.00 | $25.00- | $25.00- | [illegible] JV Trk - Other Owner | RI 01 | 0.78 | $0.00 | $0.01- | $0.01- |
| | | | CN | | | | | $25.00- | | | | | | $0.01- | |
| 05/2013 | 305 | 80 | | 4,[illegible] | [illegible] | 1.000 | [illegible] | [illegible] | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.38 | [illegible] | $0.16- | $4.75 |
| | | | SV | | | | | [illegible] | | | | | | $0.15- | |
| | | | CN | | | | | $41.[illegible]- | | | | | | $0.01- | |
| 06/2013 | 305 | 80 | | 2,[illegible] | [illegible] | [illegible] | $0.00 | $26.31- | $26.31- | [illegible] JV Trk - Other Owner | RI 01 | 0.82 | $0.00 | $0.01- | $0.01- |
| | | | CN | | | | | $26.31- | | | | | | $0.01- | |
| 06/2013 | 305 | 80 | | 4,[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.37 | [illegible] | $0.[illegible]- | $5.[illegible] |
| | | | SV | | | | | [illegible] | | | | | | $0.[illegible]- | |
| | | | CN | | | | | [illegible] | | | | | | $0.01- | |
| | | | | | | | | | Property Total | | | | | | [illegible] |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BP AMERICA PROD CO (AR) | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] SEECO INC | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | UI | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BP AMERICA PROD CO (AR) | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] SEECO INC | RI 01 | [illegible] | [illegible] | [illegible] | $1.51 |
| | | | UI | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BP AMERICA PROD CO (AR) | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | 1.000 | [illegible] | [illegible] | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.32 | [illegible] | [illegible] | $2.77 |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | SB | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | $0.00 | [illegible] | [illegible] | [illegible] JV Trk - Other Owner | RI 01 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | | | | | | | Property Total | | | | | | [illegible] |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | RI 01 | 1.40 | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | SY | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | 305 | 80 | | [illegible] | [illegible] | [illegible] | $0.00 | [illegible] | [illegible] | [illegible] JV Trk - Other Owner | RI 01 | [illegible] | $0.00 | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |

BHP BILLITON PETROLEUM (FAYETTEVILLE) LLC
ATTN: LAND ADMINISTRATION
[illegible] POST OAK BLVD.
HOUSTON, TEXAS [illegible]

# OWNER REMITTANCE ADVICE

877-311-4443
Email Address:
PetroleumOwnerRelationsRequest@BHPBilliton.com

[illegible]
[illegible] & JO L RATH
[illegible] RIVER BEND RD
[illegible] SPRINGS AR 72543-[illegible]

Owner Number: [illegible]
Check Number: [illegible]
Check Amount: [illegible]
Check Date: [illegible]

| Production Date | Product Code | Vol Type | LC | GROSS AMOUNTS: Gross Volume | Price | Quality | Gross Value | Adjustments | Net Value | OWNER AMOUNTS: Dist Dec / Owner Dec | Int. Type/Seq. / Spec | Net Volume | Gross Value | Adjustments | Net Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] BHPB PET(FAYETTEVILLE) LL | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | SV | | | | | [illegible] | | | | | | [illegible] | |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |
| | | | ES | | | | | [illegible] | | | | | | [illegible] | |
| | | | ET | | | | | [illegible] | | | | | | [illegible] | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] [illegible] | [illegible] JV Tk - Other Owner | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | CN | | | | | [illegible] | | | | | | [illegible] | |

[illegible] PETROLEUM (FAYETTEVILLE) LLC
ATTN: LAND ADMINISTRATION
[illegible] POST OAK BLVD.
HOUSTON, TEXAS 77056-3030

# OWNER REMITTANCE ADVICE

877-311-1443
Email Address:
PetroleumOwnerRelationsRequest@BHPBilliton.com

Page 6 of 6

[illegible]
JOE G & JO L RATH
2309 RIVER BEND RD
HEBER SPRINGS AR 72543-0000

Owner Number: 80001590
Check Number: C000680594
Check Amount: $110.42
Check Date: 06/30/2013

| | | | | GROSS AMOUNTS | | | | | | OWNER AMOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Production Date | Product Code | Vol Type | I.C. | Gross Volume | Price | Quality | Gross Value | Adjustments | Net Value | Dist Dec / Owner Dec | Int. Type/Seq / Basis | Net Volume | Gross Value | Adjustments | Net Value |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | $1,[illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible] |
| | | | | | | | | | | [illegible] | [illegible] PETROLEUM (FAYETTEVILLE) LL | | | | |
| | | | SV | | | | | $[illegible]- | | | | | | $0.13- | |
| | | | CN | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ES | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ET | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | $[illegible]- | $[illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- |
| | | | | | | | | | | [illegible] | JV Tk.-Other Owner | | | | |
| | | | CN | | | | | $[illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | $11,[illegible] | $1,[illegible]- | $[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible] |
| | | | | | | | | | | [illegible] | [illegible] PETROLEUM (FAYETTEVILLE) LL | | | | |
| | | | SV | | | | | $372.70- | | | | | | $0.10- | |
| | | | CN | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ES | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ET | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- |
| | | | | | | | | | | [illegible] | JV Tk.-Other Owner | | | | |
| | | | CN | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | $1,[illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible] |
| | | | | | | | | | | [illegible] | [illegible] PETROLEUM (FAYETTEVILLE) LL | | | | |
| | | | SV | | | | | $[illegible]- | | | | | | $0.15- | |
| | | | CN | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ES | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ET | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | $[illegible]- | $[illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- |
| | | | | | | | | | | [illegible] | JV Tk.-Other Owner | | | | |
| | | | CN | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | $1,[illegible]- | $12,[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible] |
| | | | | | | | | | | [illegible] | [illegible] PETROLEUM (FAYETTEVILLE) LL | | | | |
| | | | SV | | | | | $[illegible]- | | | | | | $0.13- | |
| | | | CN | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ES | | | | | $[illegible]- | | | | | | [illegible]- | |
| | | | ET | | | | | [illegible]- | | | | | | [illegible]- | |
| [illegible] | [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- | [illegible] | [illegible] | [illegible] | [illegible] | [illegible]- | [illegible]- |
| | | | | | | | | | | [illegible] | JV Tk.-Other Owner | | | | |
| | | | CN | | | | | [illegible]- | | | | | | [illegible]- | |

Property Total: [illegible]
Owner Total: [illegible]

| TOTALS | GROSS VALUE | ADJUSTMENT | NET PAYMENT |
|---|---|---|---|
| Current Payment | $119.25 | $8.83- | $110.42 |
| Year-To-Date | $253.64 | $26.59- | $227.05 |